UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIC V. VALTEAU | CIVIL ACTION |
| VERSUS | NO. 10-1982 |
| MARLIN GUSMAN, CRIMINAL SHERIFF, ET. AL | SECTION "R"(4) |

**PARTIAL REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

**I.    Factual Summary**

At the time of his Complaint, the Plaintiff, Eric V. Valteau ("Valteau") was incarcerated at the Orleans Parish Prison House of Detention ("OPP").[1] He filed this *pro se* and *in forma pauperis* Complaint pursuant to 42 U.S.C. § 1983 against Sheriff Marlin Gusman and the Louisiana Department of Corrections challenging the conditions of his confinement. He also asserts claims

---

[1] It is unclear from the record when he was released from custody.

regarding his lack of access to medical care, his classification into administrative segregation, and his denial to access of a copy of a Qur'an.

Valteau contends that the OPP is a substandard condemned building. He contends that there were unsanitary eating conditions at OPP because he was forced to eat next to toilets which were encrusted with fecal matter and infested with gnats. Valteau contends that the inmates were not properly trained or equipped to serve food because they served food without hair nets or gloves, rinsed utensils in the shower, only wore boxers without shirts while serving food, and served the inmates less food so they can eat more. He also contends that the prison had peeling lead paint, mold, mildew, and asbestos and there was rust on the bars. Valteau contends that he was forced to sleep on a bare concrete floor next to a toilet because the OPP is overcrowded. He further alleges that the temperatures exceeded ninety degrees in the summer. Valteau further complains that there was a lack of security at the prison because the deputies slept during their shifts and did not make proper rounds or shake downs. This caused him to live in fear because five inmates had been killed.

Vateau also complains that on May 4, 2010, he was screened to enroll in a GED program that would commence in August. However, the same day he was moved to the eighth floor of the House of Detention. He discovered that he was placed on the eighth floor which is the floor of inmates in administrative segregation or "the hole" and was therefore subjected to the same ramifications of someone who was sentenced after a due process hearing and other disciplinary action. He complains that he did not received any disciplinary write ups and does not know why he has been subjected to a loss of privilege and punishment.

Vateau also complains that there is a lack of medical care at the OPP. He contends that the nurses "never pass on a regular basis."

Finally, he contends that he has been discriminated against based on religion. He contends that on several occasions he has requested that the Chaplain provide him with a copy of the Qur'an and any other Islamic material available. He complains that bibles are provided to other prisoners and there are Christian Ministers at the OPP on a regular basis.

Valteau seeks $10,000.00 in damages for his pain and suffering resulting from his various allegations. In his various grievances attached to his Complaint, Valteau also seeks a transfer.

## II.     Standard of Review for Frivolousness

Title 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176

(5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

### III. Improper Defendants

#### A. Sheriff Marlin Gusman

Valteau names Sheriff Marlin Gusman as a Defendant in this matter. However, he has made no specific allegations concerning him. Under the broad reading afforded to a *pro se* complaint, Valteau has named Sheriff Marlin Gusman as a defendant in this action because of his supervisory role over the OPP.

Supervisory officials cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Supervisory officials may only be liable under § 1983 if they "[were] personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998)(citing *Sims v. Adams*, 537 F.2d 829, 831 (5th cir. 1976)); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980).

This personal involvement must also include deliberate indifference on behalf of the Defendants. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of the facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

*Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)(citing *Farmer*, 511 U.S. at 837).  "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm my be inferred by the obviousness of a substantial risk."  *Id.* (citing, *Farmer*, 511 U.S. at 842 & n. 8).

Valteau does not allege that Sheriff Gusman was present for, or personally involved in, the alleged concerns he has about the jail.  He also has not alleged that he has suffered any injury as a result of any directive, supervised training or activity, or other policy set forth by the Sheriff which would create vicarious liability.  *See Thompson v. Upsher Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennet v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).  As a result, his claims against Sheriff Gusman are frivolous.

### B.     Louisiana Department of Corrections

Valteau also names the Louisiana Department of Public Safety and Corrections as a defendant in this matter.  However, the Louisiana Department of Public Safety and Corrections is an improper defendant for two reasons.

First, state agencies are not "persons" subject to suit under 42 U.S.C. § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 66 (1989); *Hyatt v. Sewell*, 197 Fed. App'x 370 (5th Cir. 2006); *Cronen v. Texas Dep't of Human Servs.*, 977 f.2d 934, 936 (5th Cir. 1992); *McGuire v. Lafourche Parish Work-Release Facility*, Civ. Action No. 09-6755, 2009 WL 48914, at * 3 (E.D. La. Dec. 4, 2009); *Levy v. Office of Legislative Auditor*, 362 F.Supp.2d 729, 735 (M.D. La. 2005);

*Goin v. State of Louisiana*, Civ. Action No. 04-1159, 2004 WL 2694899, * 2 (E.D. La. Nov. 22, 2004); *Greer v. Tran*, Civ. Action No. 02-3145, 2003 WL 21467558, * 2 (E.D. La. June 23, 2003).

Second, pursuant to the Eleventh Amendment, "[c]itizens may not bring suit against a state or any instrumentality thereof without the state's consent." *Rodriguez v. Texas Comm. on the Arts*, 199 F.3d 279, 280 (5th Cir. 2000); *see also* U.S. Const. amend. XI. The United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity. By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. *See* La. Rev. Stat. Ann. § 13:5106(A).
>
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

*Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 280-81 (5th Cir. 2002)(quotation marks and citations omitted); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313-14 (5th Cir. 1999); *McGuire*, 2009 WL 4891914, * 3-4.

Therefore, the Louisiana Department of Public Safety and Corrections is an improper defendant for purposes of § 1983. Accordingly, it is recommended that Valteau's claims against this Defendant be dismissed as frivolous.

### IV.     Claims Against Major Carlos Louque

Valteau also names Major Carlos Louque as a Defendant in this matter and asserts claims for conditions of confinement, due process, access to medical care, and freedom of religion. For the

reasons discussed below, this Court recommends that the conditions of confinement, due process, and access to medical care claims against Major Carlos Louque be dismissed as frivolous.

### A. Conditions of his Confinement

Valteau generally complains about his conditions of confinement at the OPP. However, Valteau has not alleged that the conditions of the OPP caused him a physical injury for purposes of stating a claim under § 1983. For this reason, his claims are frivolous and otherwise fail to state a claim for which relief can be granted.

Under 42 U.S.C. § 1997e(e), an inmate cannot recover for "mental and emotional injury suffered while in custody without a prior showing of physical injury." The United States Fifth Circuit Court of Appeals, in interpreting this provision, has held that the phrase "physical injury" in § 1997e(e) means an injury that is more than *de minimis*, but it need not be significant. *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626 (5th Cir. 2003)(quoting *Harper*, 174 F.3d at 719).

In this case, Valteau has failed to allege any injury arising out of his various complaints. Therefore, his claims against Major Carlos Louque are frivolous and otherwise fail to state a claim for which relief can be granted. Even if he could provide more than a *de minimus* injury to the conditions of his confinement, his claims are still frivolous for the following reasons.

### B. Due Process Claim

To the extent that Valteau sought to assert a Due Process Claim due to his placement in administrative segregation, this claim is frivolous and should be dismissed.

The law is well settled that inmates have no protected property or liberty interest in their custodial classification or placement in the jail. *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988). The placement and classification of prisoners is a matter left to the discretion of prison

officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990); *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. 1981) (*en banc*).[2] As such, the federal courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979); *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990).

Considering this, the federal courts have recognized that "[i]nmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." *Ricker v. Leapley*, 25 F.3d 1406, 1409 (8th Cir. 1994); *accord Canterino v. Wilson*, 869 F.2d 948, 953 (6th Cir. 1989) (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." *Woods v. Edwards*, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted). Thus, in Louisiana, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), *abrogated on other grounds by Booth v. Churner*, 532 U.S. 732, 735 (2001); *accord Jones v. Roach*, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006). The Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification." *Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir. 2003) (citing *Sandin*, 515 U.S. at 472).

---

[2]*Overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986), *aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987).

Therefore, to the degree Valteau seeks to hold Louque responsible for placing him in administrative segregation, this claim is frivolous and should be dismissed.

### C. Access to Medical Care

The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id*.

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.*; *Hare v. City of Corinth*, 74 F.3d 633, 636 (5th Cir. 1996). Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983" (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In this matter, Valteau has failed to allege any facts sufficient to establish that Louque knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. He fails to allege facts sufficient to satisfy the stringent "deliberate

indifference" standard. To the contrary, Valteau alleges that the nurses do not "pass on a regular basis." He makes no allegations that the nurses never pass nor is there any allegation that he has ever actually requested medical care which was denied. Furthermore, of the eight (8) grievances attached to his petition, not one addresses the alleged denied access to medical care. Valteau makes no allegations that he requested medical treatment, or that he received any medical treatment that was inadequate. Instead, his only Complaint is that the nurses to do not come by as often as he would like. Valteau has simply failed to make any allegations sufficient for a constitutional violation. As such, his claim is frivolous and otherwise fails to state a claim for which relief may be granted.

### D. Freedom of Religion

Valteau also complains that his constitution right to exercise his religion, Muslim, was violated. He alleges that despite his request, he has not been provided with a Qur'an or other Islamic material. He also complains that unlike Christians who receive bibles and ministers, he has never seen an Imam visit the jail.

Prisoners retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); citing *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Incarceration, however, brings about the necessary withdrawal or limitation of these rights. *Id.* "The constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420.

The U.S. Supreme Court set forth the general test of prison restrictions on an inmate's First Amendment rights in the case of *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64

(1987). *Turner* provides that a restriction is valid "if it is reasonably related to legitimate penological interests." *Id.* at 89. In making a determination as to whether the impingement meets the penological interest standard, the Court must employ the four factor test set forth in *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). The factors are as follows: (1) whether the penological objective underlying the regulation at issue is legitimate and neutral, and that the regulation is rationally related to the objective; (2) whether there are alternative means of exercising the rights that remain open to inmates; (3) what impact the accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison; and (4) whether there are ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Id.* at 414. Courts need not consider each factor, however, and do not have to weight the factors evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

The record reflects that Valteau filed a grievance concerning the prison's failure to provide him with a Qur'an or other Islamic material. In response, the Warden referred the matter to Major Louque who was supposed to interview Valteau regarding the Complaint. There is no indication that Valteau was actually interviewed about this issue. At this point in the proceedings, the Court finds that Valteau has stated enough facts to allege a constitutional violation. As such, this claim should be permitted to proceed forward.

**V.     Recommendation**

For the foregoing reasons, **IT IS RECOMMENDED** that Valteau's § 1983 claims against Sheriff Marlin Gusman and the Louisiana Department of Corrections be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

**IT IS FURTHER RECOMMENDED** that Valteau's § 1983 claims against Major Carlos Louque for conditions of confinement, due process, and access to medical care be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

**IT IS FURTHER RECOMMENDED** that Valteau's freedom of religion claim against Major Carlos Louque should be allowed to proceed forward.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 30th day of June, 2011.

_____
KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[3]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.